FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 17, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SOUTH HILL MARKET, a Washington entity; GEDION TEKLEMARIAM TESFA, an individual; and OGBAI GEBREMICHAEL TESFU, an individual,<br><br>            Plaintiffs,<br><br>            v.<br><br>UNITED STATES and U.S. DEPARTMENT OF AGRICULTURE (USDA),<br><br>            Defendants. | No.   2:19-cv-00073-SMJ<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

Before the Court, without oral argument, is Defendants' Motion for Summary Judgment, ECF No. 26. Plaintiffs, who own and operate a small market in Spokane, appeal their permanent disqualification from the Supplemental Nutrition Assistance Program ("SNAP") after an investigation found they engaged in prohibited transactions involving SNAP benefits. Because the Court finds Plaintiffs have failed to produce evidence from which a rational finder of fact could find that the transactions resulting in their disqualification were legitimate, the Court grants Defendants' motion for summary judgment.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT – 1

## BACKGROUND

Plaintiffs Gedion and Ogbai Tesfa own and operate the South Hill Market (the "Market"), a gas station and small market located in the South Hill neighborhood of Spokane. *See* ECF No. 28 at 3. The Market occupies approximately 5200 square feet and sells a variety of staple foods, snacks and beverages, and other merchandise. *See* AR[1] 50, 57–67. In 2015, the Market received approval from the United States Department of Agriculture ("USDA") to participate in the Supplemental Nutrition Assistance Program ("SNAP"). AR 2, 13–14.

**A.  The SNAP Program**

SNAP is a program funded by the federal government to assist low-income households in securing adequate food. *See* 7 U.S.C. § 2011. Each month, income-qualified households receive an allowance of SNAP benefits credited to an electronic account. *See Irobe v. United States Dep't of Agric.*, 890 F.3d 371, 375 (1st Cir. 2018). SNAP benefits may only be redeemed for eligible food items. *See* 7 C.F.R. § 274.7(a) ("Program benefits may be used only . . . to purchase eligible food for the household."); 7 C.F.R. § 271.2 (defining eligible food).

Retailers must apply and be authorized by the federal government to accept SNAP benefits. 7 C.F.R. § 278.1(a). At an authorized SNAP retailer, customers

---

[1] Citations to the Administrative Record (AR), ECF Nos. 13, 14 & 15, are to the provided page number to avoid confusion.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT – 2

redeem their benefits through a process similar to using a credit or debit card. *See Irobe*, 890 F.3d at 375. The retailer first calculates the total amount due for the customer's purchase of eligible food items and processes the transaction through an electronic terminal, after which the purchase is debited from the customer's account, and the retailer is reimbursed by the government. *Id.*

The applicable regulations prohibit "trafficking" SNAP benefits. 7 C.F.R. § 278.6(e)(l)(i); 7 U.S.C. § 2021(b)(3)(B). Trafficking includes, among other things, "buying, selling, stealing, or otherwise effecting an exchange of SNAP benefits . . . for cash or consideration other than eligible food." 7 C.F.R. § 271.2. The presumptively mandatory penalty for trafficking is permanent disqualification from the SNAP program. 7 C.F.R. § 278.6(e)(l)(i) ("[FNS] *shall* . . . [d]isqualify a firm permanently if . . . [p]ersonnel of the firm have trafficked as defined in [7 C.F.R.] § 271.2"); 7 U.S.C. § 2021(b)(3)(B). However, a retailer found to have engaged in trafficking may be spared disqualification—and instead assessed a monetary penalty—if it "had an effective policy and program in effect to prevent" program violations and provides evidence that the retailer's ownership was unaware of the violations and did not approve, benefit from, or take part in them. 7 U.S.C. § 2021(b)(3)(B); 7 C.F.R. § 278.6.

**B.    The Investigation**

In 2017, Food and Nutrition Services ("FNS")—the division within USDA

tasked with overseeing the SNAP program—detected "patterns of unusual, irregular, and inexplicable" SNAP transaction activity at the Market. AR 88–97. FNS began an investigation and sent an inspector to visit the Market in April 2018. AR 72. The inspector observed that the store had only two cash registers, each with a terminal capable of processing SNAP transactions, no shopping carts, and only five shopping baskets for customer use. *Id.* According to the inspector, the most expensive SNAP-eligible item for sale was a can of coffee sold for $13.99. *Id.*

FNS also reviewed and analyzed the Market's SNAP transaction data for evidence of irregularities. FNS identified a total of 309 transactions with hallmarks of fraud, including eleven sets of multiple SNAP transactions from the same account within a twenty-four-hour period. *See* AR 91–97. FNS also noted the Market processed significantly more SNAP transactions than nearby comparable retailers and that its SNAP transactions carried higher dollar volumes than those comparable retailers. AR 80–81. Finally, FNS studied the account activity of five households, observing that while each shopped at larger retailers, each also redeemed SNAP benefits at the Market in a suspicious manner. AR 82–86.

On May 15, 2018, FNS sent the Market a "charge letter" formally notifying it of the trafficking charge and including a list of the suspicious transactions. AR 88–90. The letter invited Plaintiffs to respond to the allegations, as well as to submit evidence that they maintained a program to ensure compliance with the

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT – 4

SNAP program's regulations. AR 88–89.

Plaintiffs responded, denying that the Market processed any fraudulent transactions, but not providing any evidence of a compliance program. AR 100. Plaintiffs explained the Market operated as a "neighborhood market in a low income area of town," and thus acted more like a grocery store than a convenience store, explaining the suspiciously frequent and large transactions. *Id*. Specifically, Plaintiffs explained the Market frequently sold twenty-five-pound bags of Ethiopian teff flour for $45.00 per bag, and that customers occasionally bought more than one bag at a time. *Id*. Plaintiffs attached photographs of the store and invoices from suppliers to substantiate their representations. *See* AR 101–780.

After evaluating Plaintiffs' response, FNS determined the charge of trafficking had been substantiated, and recommended the Market be permanently disqualified from the SNAP program. AR 798–99. Upon notice of FNS's decision, the Market appealed to the administrative review branch of the FNS, *see* AR 802, which upheld the trafficking finding and the resulting sanction. AR 846–56. Plaintiffs thereafter sought judicial review in this Court. ECF No. 1.

## LEGAL STANDARD

**A.    Summary Judgment**

The Court must grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as

a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In ruling on a summary judgment motion, the Court must view the evidence in the light most favorable to the nonmoving party. *See Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). Thus, the Court must accept the nonmoving party's evidence as true and draw all reasonable inferences in its favor. *See Anderson*, 477 U.S. at 255. The Court may not assess credibility or weigh evidence. *See id.* Nevertheless, the nonmoving party may not rest upon the mere allegations or denials of its pleading but must instead set forth specific facts, and point to substantial probative evidence, tending to support its case and showing a genuine issue requires resolution by the finder of fact. *See Anderson*, 477 U.S. at 248–49.

**B.     Appeal from Disqualification Decision**

A retailer disqualified from participation in the SNAP program may appeal the decision to an administrative body within the USDA. 7 C.F.R. § 279.1; 7 U.S.C. § 2023. A retailer that is unsuccessful in an administrative appeal may seek judicial review. 7 U.S.C. § 2023(a)(1); 7 C.F.R.§ 279.7(a). Judicial review takes place in two parts. First, the Court undertakes a "trial de novo" to determine the validity of

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT – 6

the USDA's finding that the retailer violated SNAP program regulations. 7 U.S.C. § 2023(a)(13), (15); *Kim v. United States*, 121 F.3d 1269, 1272 (9th Cir. 1997). This inquiry is broader than review under the Administrative Procedures Act, particularly in that "the plaintiff 'may offer any relevant evidence available to support his case, whether or not it has been previously submitted to the agency.'" *Kim*, 121 F.3d at 1272 (quoting *Redmond v. United States*, 507 F.2d 1007, 1011–12 (5th Cir. 1975)).

At this first stage, the retailer bears the burden of proving, by a preponderance of the evidence, "that the violations did not occur." *Id.* (citing *Plaid Pantry Stores, Inc. v. United States*, 799 F.2d 560, 563 (9th Cir. 1986)). Thus, in resisting a motion for summary judgment, the retailer must identify genuine disputes of material fact concerning *each* of the violations with which it is charged. *Young Choi Inc. v. United States*, 639 F. Supp. 2d 1169, 1180 (D. Haw. 2009) (citing *Kahin v. United States*, 101 F. Supp. 2d 1299, 1303 (S.D. Cal. 2000)).

The mere fact that the retailer was not "caught 'red-handed' engaging in . . . fraud" will not suffice to save it from disqualification. *Kahin*, 101 F. Supp. 2d at 1303. Indeed, the retailer's disqualification may be upheld upon evidence of "irregular and suspicious activity," such as SNAP debits exceeding the store's revenues and large SNAP transactions or transactions occurring in "quick succession," particularly where the retailer is a small store. *See Idias v.*

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT – 7

*United States*, 359 F.3d 695, 698 (4th Cir. 2004) (citing *Kahin*, 101 F. Supp. 2d at 1303–04); 7 C.F.R. § 278.6(a). Furthermore, "general justifications for large expenditures" are insufficient to rebut evidence of fraudulent SNAP benefit activity. *Young Choi, Inc.*, 639 F. Supp. 2d at 1179. Instead, the retailer must present evidence tending to establish the legitimacy of "each transaction FNS alleges as suspicious." *Id.* at 1178 (citing *Kahin*, 101 F. Supp. 2d at 1303).

If the retailer fails to carry its burden of showing the alleged violations did not occur, the Court proceeds to the second step of the analysis, where it must evaluate whether the sanction the USDA imposed was arbitrary and capricious. *Plaid Pantry Stores, Inc.*, 799 F.2d at 561 (citing *Bertrand v. United States*, 726 F.2d 518, 520 (9th Cir. 1984).

## DISCUSSION

The "charge letter" on which FNS based the Market's permanent disqualification identified a total of 309 suspicious transactions with hallmarks of trafficking. *See* AR 88–90. Accordingly, to survive the Government's motion for summary judgment, Plaintiffs must identify evidence creating at least a genuine dispute of material fact as to the legitimacy of those transactions. *Young Choi, Inc.*, 639 F. Supp. 2d at 1179. Having reviewed the record in this matter, the Court finds Plaintiffs have only proffered general justifications lacking a specific evidentiary basis and have thus failed to carry that burden.

A.  **Excessive Transaction Totals**

One basis for FNS's disqualification decision was the number of high-value SNAP transactions at the Market compared to retailers of similar size and capacity in the same area.[2] AR 88. Plaintiffs argue this is a result of the Market's role as the primary grocery store for the neighborhood in which it is situated. Specifically, Plaintiffs contend much of the suspicious transaction information may be explained by the sale of teff flour. ECF No. 28 at 6 ("Just that one item can easily explain a majority of the suspicious transactions."). Plaintiffs explain the highest dollar-value transactions identified as suspicious by FNS simply represent different quantities of flour being purchased—identifying, for example, a transaction for $180.00 as "exactly equal" to four bags of flour. ECF No. 28 at 6–7. Further, Plaintiffs contend, "[a]ny purchase above those" even $45 intervals "would indicate the customer buying some other food items along with the flour." *Id.* at 7.

But while the frequent sale of teff flour represents a tidy explanation for the

---

[2] Plaintiffs argue the Court should ignore FNS's conclusions drawn from data of SNAP benefit transactions maintained in the "ALERT system" because such evidence is "nothing but conclusory allegations." ECF No. 28 at 11. Even if the Court was able to find the ALERT database's detailed transaction data amounted to "conclusory allegations," this objection is easily discarded, as Congress has expressly authorized disqualification decisions premised on data from the ALERT system. 7 U.S.C. § 2021(a)(2); 7 C.F.R. § 278.6(a); *see also Irobe*, 890 F.3d at 379 ("Congress expressly authorized the FNS to consider 'evidence obtained through a transaction report under an electronic benefit system' in disqualifying food stores for food stamp trafficking." (citing 7 U.S.C. § 2021(a))).

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT – 9

suspicious purchases FNS identified, having review the record, the Court finds it amounts to no more than a "generalized explanation[] for large expenditures" lacking any specific evidence in the record, and is therefore insufficient to overcome summary judgment. *See Young Choi, Inc.*, 639 F. Supp. 2d. at 1179.

As an initial matter, Plaintiffs contend FNS's "own contractor took pictures of teff flour" in the Market "as early as the first[ ]year [the] store was open." ECF No. 28 at 6. But the record clearly establishes the photos at issue, depicting teff flour in the Market, were provided by *Plaintiffs* in response to the FNS charge letter; those photos taken by the FNS inspector do not show teff flour inside the Market. AR 57–67; 790–93; *see also* ECF No. 34 at 2.[3] Indeed, Plaintiffs point to no competent evidence undermining the FNS inspector's observation that the Market sold exclusively low-value food items. *See* ECF No. 27 at 3–6. Nor can the receipts Plaintiffs provided in response to the Government's motion suffice to avoid summary judgment, as none document transactions within the period of alleged trafficking. *See* ECF No. 28-6.

Plaintiffs also rely on declarations of the Market's customers, each of which make exactly the same representations: that the declarant is a regular customer of

---

[3] In support of their claim that the FNS contractor photographed teff flour in the Market, Plaintiffs cite the deposition of USDA employee Richard Weber. ECF No. 28 at 6. But Mr. Weber never testified that he took the photos; indeed, when asked if Mr. Weber knew whether the photos depicted the Market, he indicated he had no way of knowing. *See* ECF No. 29-2 at 11.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT – 10

the Market, which is "one of the most accessible stores near" their home; that they frequently shop there and sometimes make multiple purchases in a single day; that they have previously purchased large amount[s] of groceries from the Market and "can easily purchase more than $100.00 or more of [SNAP-]eligible items in one shopping trip;" and that neither Plaintiffs nor the Market's employees "have ever tried to ask [them] to use" SNAP benefits "in any illegal way or to traffic the benefits." *See* ECF No. 28-3 at 1–9. Yet none of these short, conclusory declarations, each of which was signed in 2019, explain whether the declarant shopped at the Market during the period of alleged trafficking, much less explain any of the allegedly fraudulent transactions. *See id.* Furthermore, none mentions purchases of teff flour or any other high-value merchandise that would explain the unusually large receipts at the Market. *Id.* As such, the Court finds Plaintiff have failed to present competent evidence to rebut FNS's conclusion that the Market engaged in frequent SNAP transactions with excessive dollar values.

B.   **Rapid Transactions From Same Account**

FNS also identified groups of transactions from the same SNAP household's account within the same twenty-four-hour period as evidence supporting the trafficking charge. AR 82, 88. Plaintiffs were initially unable to explain this activity, both when asked by FNS investigators and during later depositions. *See* ECF No. 35 at 8–9. In response to the Government's motion for summary judgment, however,

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT – 11

Plaintiff Gedion Tesfa submitted a sworn declaration asserting customers would occasionally make purchases "in sets," split transactions by buying bulky items separately, and make second transactions upon realizing they had benefits remaining after their initial purchase. ECF No. 30 at 1–3. But Plaintiff's declaration is conclusory, self-serving, devoid of supporting evidence, and does not purport to explain any specific, allegedly fraudulent transaction. *See* ECF No. 30. It is therefore insufficient to overcome the Government's motion for summary judgment. *See Duchimaza v. United States*, 211 F. Supp. 3d 421, 435 (D. Conn. 2016) (rejecting retailer's explanation that large families would shop together using same benefits card where supported only be "conclusory assertions for which Plaintiffs provide no evidence"); *Kahin*, 101 F. Supp. 2d at 1303 (rejecting unspecific explanations for rapid transactions involving same account).

**C.    Debits Exceeding Inventory**

FNS also identified SNAP transactions exceeding the Market's documented inventory as evidence of trafficking. *See Idias v. United States*, 359 F.3d 695, 698–99 (4th Cir. 2004) (affirming summary judgment upholding disqualification where "debits possibly could have exceeded gross sales"); *Irobe*, 890 F.3d at 381 (noting *sufficient* inventory to account for purchases cannot disprove trafficking conclusion because "[m]erchants may conduct legitimate business side-by-side with unlawful trafficking").

Specifically, FNS analyzed invoices provided by the Market for three months during the period of alleged trafficking and found the Market's SNAP transactions for each of the months exceeded its documented inventory by at least $5000 every month. *See* AR 795–97, 854–55. Plaintiffs summarily argue invoices submitted with their response rebut this conclusion. ECF No. 28 at 9–10. But only one of the dozens of invoices Plaintiffs provide reflects inventory purchased during the three months examined in FNS's analysis. *See* ECF No. 28-7 at 16, 33 (November 30, 2017 invoice for teff flour). Even assuming this invoice creates a genuine dispute of material fact as to FNS's conclusion for the month in question,[4] Plaintiffs have failed to identify evidence establishing inventory not captured in FNS's analysis for the two remaining months, and thus have not met their burden to survive summary judgment. *Young Choi, Inc.*, 639 F. Supp. 2d. at 1179.

**D.    No Less Severe Sanction Was Available**

Having concluded the Government is entitled to summary judgment on the validity of FNS's finding that Plaintiffs engaged in prohibited trafficking, the Court must evaluate whether the chosen sanction of permanent disqualification was "arbitrary and capricious." *Plaid Pantry Stores, Inc.*, 799 F.2d at 561. As set out above, permanent disqualification is presumptively mandatory where a retailer is

---

[4] The Court also notes the invoice in question reflects a shipment date falling on the last day of November 2017, and thus its probative value concerning the Market's SNAP-eligible inventory *during* that month is dubious. *See* ECF No. 28-7 at 16, 33.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT – 13

found to have engaged in trafficking. 7 C.F.R. § 278.6(e)(l)(i) (providing FNS "*shall* . . . [d]isqualify a firm permanently if . . . [p]ersonnel of the firm have trafficked as defined in [7 C.F.R.] § 271.2" (emphasis added)). USDA may assess a monetary penalty in lieu of disqualification where the retailer produces evidence of a USDA-approved plan to ensure compliance with SNAP regulations and demonstrates that the store's ownership was ignorant of the violations and did not benefit from them. *See* 7 C.F.R. § 278.6 However, in response to FNS's charge letter, Plaintiffs produced no evidence of such a compliance plan, nor have they come forward with such evidence since the filing of this action. *See* AR 88–90, 855–56; ECF No. 28. Because permanent disqualification was the only sanction permitted under the law in these circumstances, the Court cannot find that sanction was arbitrary and capricious. *See Plaid Pantry Stores, Inc.*, 799 F.2d at 561.

## CONCLUSION

Plaintiffs have failed to come forward with evidence from which a rational factfinder could determine each of the suspicious transactions that formed the basis for their disqualification from the SNAP program were legitimate. Because they would, therefore, be unable to carry their burden of proof at trial, summary judgment is appropriate.[5] The motion is granted.

---

[5] Because the Court grants summary judgment in favor of Defendants on the merits of Plaintiffs' claims, it need not decide whether USDA was a proper Defendant to this action. *See* ECF No. 26 at 19–20.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT – 14

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendants' Motion for Summary Judgment, **ECF No. 26**, is **GRANTED**.

2. The Clerk's Office is **DIRECTED** to enter judgment in favor of Defendants, and thereafter **CLOSE** this file.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 17th day of July 2020.

_____
SALVADOR MENDOZA, JR.
United States District Judge